UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUSTIN SCHNEIDER,

      Petitioner,

                                  CASE NO. 2:10-CV-15017
v.                               HONORABLE GEORGE CARAM STEEH
                                  UNITED STATES DISTRICT JUDGE

RAYMOND BOOKER,

      Respondent.
_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

      Justin Schneider, ("Petitioner"), confined at the Macomb Correctional Facility in New Haven, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, filed by attorney Neil C. Williston, petitioner challenges his conviction for first-degree premeditated murder, M.C.L.A. 750.316. For the reasons stated below, the petition for writ of habeas corpus is **DENIED.**

## I. Background

      Petitioner was convicted of the above charge following a jury trial in the Kalamazoo County Circuit Court. Petitioner's conviction arose out of the murder of a prostitute named Karen Sue Hussine-Sanders in Kalamazoo, Michigan in August of 2002.

      On August 12, 2002, an animal control officer discovered the victim's body near the Sackett Brick Company in Kalamazoo, Michigan. (Tr. 10/24/07, p. 221-22).

      Kalamazoo Public Safety Crime Laboratory Specialist Gary Latham subsequently arrived at the crime scene. The victim was lying facedown in the brush. Latham

-1-

testified that it appeared as though some weeds had been placed over her.  The victim was naked from the waist down and her shirt and bra had been pulled up to her neck. (*Id.,* pp. 226-227, 236, 240-42, 252, 256, 260, 264-66, 292-95).  Latham believed that the victim had been carried to, and not dragged, to the area where her body was discovered. (*Id.,* pp. 264-65).  Latham testified that the victim's blood-stained white shorts were recovered about twenty feet away in the trees, about five or six feet above the ground. (*Id.,* pp. 251-52, 260, 265, 282, 345).  The victim's underwear was found next to her body in the area near her feet. (*Id.,* pp. 265-66, 268, 285, 330-31).  Latham also discovered a landscaping block that was approximately nine inches long and seven and a half inches wide and which weighed 21¼ pounds.  The block was about fifteen feet from the woman's body. (*Id.,* pp. 241, 244, 246-47, 282, 345). According to John Sackett, the owner of Sackett Brick, such a block was missing from the retaining wall by the road. (*Id.,* pp. 226-27).

Latham sprayed a chemical on the area which revealed "a blunt force strong enough to throw large volumes of blood quite a distance."  The blood spatter covered a distance of about twelve feet, which Latham testified was the farthest that he had ever seen.  Latham also recovered a gray polo shirt in the weeds approximately five feet east of the victim's woman's body and a black short sleeved shirt that was about six to seven feet east of the victim's body. (*Id.,* pp. 243-49, 254, 261-64, 269, 281-85, 345).

John Sackett testified that he found a single "burn out mark" from a vehicle, which had apparently left the area quickly. This  mark was at least twenty feet from the victim's body. (*Id.,* pp. 227, 240).

-2-

On the early morning hours of Saturday, August 10, 2002, a canine officer from the Kalamazoo Police was called to help search for a drunk driver who had fled from the police.  The dog tracked from the open driver's side door of petitioner's truck to the east. About thirty yards away, the canine officer saw a shoe.  After jumping over a fence, the dog continued to proceed west, finding another shoe next to a knife.  The police found petitioner behind a chain-link fence, hiding behind a tree. The track only took about ten minutes.  The area where the victim's body would be found two days later was less than ½-mile from where the police began tracking petitioner. (*Id.,* pp. 314-19).

Kalamazoo County Sheriff's Department Deputy Michael Denoon transported petitioner to the Kalamazoo County Jail following his arrest for drunk driving.  Deputy Denoon indicated that petitioner was "very agitated," made several insults, suffered from mood swings, and made threats.  Petitioner warned Deputy Denoon that "he could kick any police officer's ass" if he was not handcuffed.  Petitioner was so combative that Deputy Denoon had to use a number of defensive techniques to get him inside the jail. Petitioner was six feet tall and weighed 225 pounds.  Petitioner did not inform Deputy Denoon that anyone had tried to assault him or that someone needed medical assistance.  (*Id.,* pp. 298-301, 304-06).

Forensic pathologist Doctor Marcus Nashelsky performed an autopsy on the victim.  Given the nature of the victim's head injuries and decomposition, Dr. Nashelsky estimated that she was about 5' 3" tall, and weighed about 160 pounds.  Dr. Nashelsky testified that blunt-force trauma injuries to the victim's head killed her.  Dr. Nashelsky indicated that the victim's head had been fractured into "at least 60 pieces." In addition, the victim's hyoid bone, which is a small U-shaped bone located high in the neck, had

been fractured.  Dr. Nashelsky testified that such a fracture is often seen in cases that involve manual strangulation.  Dr. Nashelsky opined that the victim was already on the ground when she was struck.  Dr. Nashelsky indicated that the victim could have been struck more than once. (Tr. 10/26/07, pp. 490-98, 500-01, 511-18, 525).

Forensic anthropologist Doctor Todd Fenton assisted in the victim's autopsy.  Dr. Fenton agreed that the woman suffered massive blunt-force trauma consistent with being struck with a 21 ¼-pound concrete block.  Given the amount of fracturing, Dr. Fenton could not rule out two blows to the victim. (*Id.,* pp. 521-27, 529-31).

The victim was identified by her fingerprints. (Tr. 10/24/07, pp. 333, 338-39, 346-48, 350).  The victim was arrested almost two months before she was murdered. At the time of her arrest, the victim was 5' 1" tall and weighed 190 pounds. (*Id.,* p. 336). The victim's roommate indicated that the victim did not carry a weapon when she worked. (*Id.,* p. 354).

On August 7, 2006, nearly four years after the murder, DNA collected from semen and other biological material that had been recovered from the black t-shirt and gray polo shirt found at the crime scene were matched through a national DNA database with Petitioner's DNA. (Tr. 10/25/07, pp. 372, 376-80).  Blood that had been recovered from petitioner's gray polo shirt matched the victim's DNA profile. (*Id.,* pp.373-74, 376).

Following his arrest for the murder, petitioner made a statement to the police in which he admitted to having sex with the victim on three or four prior occasions. Petitioner stated that on the night in question, the victim suggested that they go to Sackett Brick, where she performed oral sex on him in his pickup truck for $10 or $15.

-4-

Petitioner told the police that the victim then agreed to have sex with him in the bed of

his pickup for no additional charge. Petitioner told the police that after they finished

putting on their clothes, the victim lunged at him with a knife for no reason. Petitioner

responded by punching the victim in the nose and knocking her down to one knee,

which caused her to bleed. Petitioner told the police that the victim still had the knife in

her possession. Petitioner then grabbed the cement block and threw it at the victim,

hitting her head. Although the victim dropped the knife and fell to the ground, petitioner

indicated that she was swearing and angry. Petitioner picked up the block and threw it

at the victim a second time. Petitioner told the police that the victim was still alive when

he left because she was moaning. Petitioner told the police that he drove away from

the crime scene, with his headlights were off. Petitioner indicated that a deputy who

was driving by turned around and began following petitioner. Petitioner acknowledged

that he fled from the police because he was afraid that the deputy knew what he had

just done to the victim. (*Id.,* pp. 401-08).

In a second interview with the police, petitioner informed them that he dragged

the victim's body to the weeds and covered it with weeds that he pulled. Petitioner told

the police that the knife that he took from the victim remained in the console of his

pickup, which he had abandoned when the deputy chased him. Petitioner did not know

why he did not tell the police on the night of his arrest about what had happened so that

the victim could get help. (*Id.,* pp. 413-16).

In June of 2007, while awaiting trial on the charge, petitioner discussed his case

with two cellmates at the Kalamazoo County Jail, Christian Jones and Dennis Gilleylen.

Petitioner told the two men that he had refused to pay the victim after they had sex.

The victim became upset and an argument broke out, which turned physical. Petitioner told Jones and Gilleylen that he picked up a brick and hit the victim twice, bashing in her head. Petitioner started to leave, but then, he "dragged her over to some weeds and pushed her body into some weeds." (Tr. 10/25/07, pp. 441-42; Tr. 10/26/07, pp. 467-68, 475). Petitioner told Gilleylen that he had lied to the police about the victim having a knife. (Tr. 10/26/07, pp. 468, 477-78).

Petitioner's conviction was affirmed on appeal. *People v. Schneider*, No. 282323 (Mich. Ct. App. July 30, 2009); *lv. den.* 485 Mich. 1012; 775 N.W.2d 777 (2009).

Petitioner has now filed a petition for writ of habeas corpus, seeking relief on the following grounds:

I. Mr. Schneider's right to due process as well as his Fifth Amendment right to remain silent were violated when the people impermissibly commented on his in-custody silence as substantive proof of guilt and thus violated the rule announced in *People v. Bobo*.

II. Mr. Schneider is entitled to a new trial because his constitutional and statutory right to be present during his trial was violated.

III. The prosecution failed to prove Mr. Schneider guilty beyond a reasonable doubt of premeditated first-degree murder.

IV. The trial court committed plain error in violation of due process in failing to instruct the jury on voluntary manslaughter under a theory of imperfect self-defense.

V. Alternatively, trial counsel was constitutionally ineffective in failing to object to the improper use of Mr. Schneider's silence, in waiving Mr. Schneider's presence at a critical stage during his trial without consent, and for failing to request an instruction on imperfect self-defense.

VI. The trial court abused its discretion and this Court should vacate the order that Mr. Schneider pay $1,117.00 for the cost of his court-appointed attorney where the court made no inquiry into his present or future ability to pay and Mr. Schneider was and will remain indigent.

-6-

**II.  Standard of Review**

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas

cases:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect
> to any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim–
>
> > (1)  resulted in a decision that was contrary to, or involved an
> > unreasonable application of, clearly established Federal law,
> > as determined by the Supreme Court of the United States; or
> > (2)  resulted in a decision that was based on an
> > unreasonable determination of the facts in light of the
> > evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the

state court arrives at a conclusion opposite to that reached by the Supreme Court on a

question of law or if the state court decides a case differently than the Supreme Court

has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-

06 (2000).  An "unreasonable application" occurs when "a state court decision

unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."

*Id.* at 409.  A federal habeas court may not "issue the writ simply because that court

concludes in its independent judgment that the relevant state-court decision applied

clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a

state-court decision must be consistent with the respect due state courts in our federal

system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a

'highly deferential standard for evaluating state-court rulings,'and 'demands that

state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)).  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* ( citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003).  Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 131 S. Ct. at 786.  Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the  Supreme Court's precedents. *Id.*  Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)).  Thus, a "readiness to attribute error [to a

state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24.  Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87.

### III.  Discussion

**A.  Petitioner's request to delete his unexhausted claim.**

Petitioner has filed a "Formal Declaration of Abandonment of Unexhausted Claim," in which he seeks to delete his sixth claim from his petition, because the claim had not been properly exhausted with the state courts.

A district court must allow a habeas petitioner to delete the unexhausted claims from his or her petition, especially in circumstances in which dismissal of the entire petition without prejudice would "unreasonably impair the petitioner's right to obtain federal relief." *Rhines v. Weber,* 544 U.S. 269, 278 (2005). Accordingly, in *lieu* of dismissing the petition, the Court will permit petitioner to delete his sixth claim from his petition.

**B.  The procedural default issue.**

Respondent contends that petitioner's first, second, and fourth claims are procedurally defaulted because petitioner failed to object to these errors at trial. Petitioner claims that his trial counsel was ineffective for failing to object to these errors. Ineffective assistance of counsel may establish cause for procedural default.  *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000).  Given that the cause and prejudice inquiry

-9-

for the procedural default issue merges with an analysis of the merits of petitioner's

defaulted claims, it would be easier to consider the merits of these claims. *See*

*Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).  Because "the

procedural default issue raises more questions than the case on the merits," this Court

will assume, for the sake of resolving the claims, that there is no procedural default by

petitioner and will decide the merits of the claims.  *Falkiewicz v. Grayson,* 271 F. Supp.

2d 942, 948 (E.D. Mich. 2003)(internal quotation omitted).

**C.  Claim # 1.  The post-arrest silence claim.**

Petitioner first claims that the prosecutor improperly commented and elicited

testimony concerning his in-custody silence at the time of his drunk driving arrest on

August 10, 2002.  Petitioner claims that the prosecutor improperly elicited testimony

from Deputy Denoon, the arresting officer, that petitioner did not tell Denoon that he had

been assaulted by the victim or that she needed medical help.  There are no allegations

from petitioner, nor is there any evidence in the record, that Deputy Denoon had

advised petitioner of his *Miranda* rights or had otherwise advised him of his right to

remain silent at the time of his arrest for drunk driving.

A habeas court may only look at the holdings of the United States Supreme

Court as they existed at the time of the relevant state court decision to determine

whether the state court decision was contrary to, or an unreasonable application of,

clearly established federal law. *Mitzel v. Tate,* 267 F. 3d 524, 530-31 (6th Cir. 2001).  A

habeas court cannot look to the decisions of this circuit, or other courts of appeals,

when deciding whether a state court's decision was contrary to, or an unreasonable

application of, clearly established federal law. *Id.*  Although the Sixth Circuit has held

that *pre-Miranda* silence cannot be used as substantive evidence of guilt, *See Combs v. Coyle,* 205 F.3d 269, 282–83 (6th Cir. 2000), Sixth Circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court" and thus "cannot form the basis for habeas relief under [the] AEDPA." *Parker v. Matthews,* --- S.Ct. ----, 2012 WL 2076341, * 6 (U.S. June 11, 2012).  The Sixth Circuit's holding in *Combs* is therefore not controlling in this case. *See Hall v. Vasbinder,* 563 F.3d 222, 232 (6th Cir. 2009).

The United States Supreme Court has not spoken dispositively on the issue of whether the use of a criminal defendant's post-arrest, pre-*Miranda* silence as substantive evidence violates the Fifth or Fourteenth Amendments.  In fact, there appears to be a split in the circuits on this issue.  A number of circuits have held that it is permissible for a prosecutor to use a criminal defendant's silence after he or she is arrested, but before *Miranda* warnings have been given, as substantive evidence. *See United States v. Frazier,* 408 F.3d 1102, 1111 (8th Cir. 2005)(holding that when no governmental action induced post-arrest, pre-*Miranda* silence, it could be introduced as evidence of guilt); *United States v. Rivera,* 944 F. 2d 1563, 1568 (11th Cir. 1991) (prosecution may comment on a defendant's post-arrest silence prior to *Miranda* warnings being given); *United States v. Love,* 767 F. 2d 1052, 1063 (4th Cir. 1985)(same); *compare United States v. Moore*, 104 F. 3d 377, 385 (D.C. Cir. 1997)(introduction of defendant's pre-*Miranda* custodial silence violates the Fifth Amendment); *United States v. Whitehead* 200 F.3d 634, 638 (9th Cir. 2000)(same).

In this case, the Michigan Court of Appeals' decision to uphold petitioner's conviction despite the use of his post-arrest, pre-*Miranda* silence as substantive

evidence was not contrary to or unreasonable application of clearly established federal law, and thus does not warrant federal habeas relief, when, at the time of petitioner's trial, the constitutionality of using a criminal defendant's post-arrest, pre-*Miranda* silence as substantive evidence had not been addressed by United States Supreme Court and was the subject of disagreement among the federal circuit courts. *See Jones v. Trombley,* 307 Fed. Appx. 931, 933-34 (6th Cir. 2009); *Narlock v. Hofbauer,* 118 Fed. Appx. 34, 35 (6th Cir. 2004).

Additionally, it is permissible for a prosecutor to refer to a defendant's silence if it is a fair reply to a defense theory or argument. *Hall,* 563 F.3d at 233 (citing *United States v. Robinson*, 485 U.S. 25, 34 (1988)); *Lockett v. Ohio*, 438 U.S. 586, 595 (1978). When considering whether a prosecutor acts properly in replying to a defense theory, a reviewing court must "examine the prosecutor's questions and remarks in their context." *Id.,* at 234.

In the present case, the prosecutor's elicitation of testimony from Deputy Denoon that petitioner had not informed him at the time of his arrest for drunk driving that he had been assaulted by the victim or that she needed medical attention was a fair reply to petitioner's theory that he acted in self-defense when he assaulted the victim. Thus, the admission of Deputy Denoon's testimony did not violate petitioner's rights.

Finally, assuming that the trial court erred in admitting this evidence, petitioner would still not be entitled to habeas relief. For purposes of determining whether federal habeas relief must be granted to a state prisoner on the ground of federal constitutional error, the appropriate harmless error standard to apply is whether the error had a

-12-

substantial and injurious effect or influence in determining the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

In the present case, there was significant evidence, apart from Deputy Denoon's reference to petitioner's silence, that petitioner with premeditation and deliberation killed the victim and that he did not act in self-defense. (See Claim # III, *infra*). In light of the fact that there was substantial evidence that petitioner murdered the victim and that he did not act in self-defense, any references to petitioner's post-arrest, pre-*Miranda* silence was harmless error. *See Williams v. Straub,* 56 Fed. Appx. 259, 260 (6th Cir. 2003). Petitioner is not entitled to habeas relief on his first claim.

### D. Claim # 2. The claim involving petitioner's absence from critical stages of the prosecution.

Petitioner next contends that he was deprived of his constitutional right to be present at all critical stages of his trial when he was absent during four proceedings of the trial. Three of the proceedings occurred during the selection of the jury and the fourth proceeding concerned the removal of a juror during jury deliberations.

The Michigan Court of Appeals rejected petitioner's claim. Although acknowledging that it was error for petitioner to be absent from these stages of the trial, the Michigan Court of Appeals concluded that petitioner had failed to establish that he was prejudiced by his absence from these proceedings:

> Defendant's absence without a valid waiver was plain error. However, defendant has failed to establish that he was prejudiced by his absence from the four challenged proceedings. During each of the challenged proceedings, defendant was represented by counsel. In addition, the three proceedings that took place during jury selection merely removed potential jurors for hardship or for possible bias against defendant. In the fourth proceeding, jury deliberations were halted as a hearing was held to determine whether Juror number 13 should be removed from the jury

-13-

because he indicated to another juror that he was planning to research the issue of premeditation before returning for the second day of deliberations. The trial court "erred on the side of caution" and excused Juror number 13 for failing to follow the trial court's instructions. When defendant rejoined the proceedings, he was permitted to move for a mistrial after learning the substance of the hearing with Juror number 13. Therefore, we cannot conclude that defendant was prejudiced by his absence from the hearing. Because the challenged proceedings did not prejudice defendant's substantial rights, any error was harmless.

*Schneider,* Slip. Op. at * 2.

A defendant has a constitutional right to "be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer,* 482 U.S. 730, 745 (1987). This right, however, "is not absolute, but exists only when 'his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge.'" *U.S. v. Henderson*, 626 F. 3d 326, 343 (6th Cir. 2010)(quoting *United States v. Brika*, 416 F.3d 514, 526 (6th Cir. 2005)(quoting *Kentucky v. Stincer*, 482 U.S. at 745). "In other words, the defendant's presence is not guaranteed when it would be 'useless,' but only 'to the extent that a fair and just hearing would be thwarted by his absence.'" *Id.* (quoting *Brika,* 416 F. 3d at 526). Indeed, the U.S. Constitution "does not require the defendant to be present when his 'presence would be useless, or the benefit but a shadow.'" *Cathron v. Jones,* 190 F. Supp. 2d 990, 1001 (E.D. Mich. 2002)(quoting *Snyder v. Massachusetts,* 291 U.S. 97, 106-107 (1934); *overruled on other grds by Malloy v. Hogan,* 378 U.S. 1 (1964)). A defendant's presence at a hearing is "largely a matter of form" when a defendant's lawyer is present at proceedings which raise largely legal issues. *Cathron,* 190 F. Supp. 2d at 1001-1002 (quoting *Fisher v. Roe,* 263 F. 3d 906, 916 (9th Cir. 2001)).

-14-

In the present case, three of the proceedings involved in-chambers conferences in which the judge, the prosecutor, and defense counsel discussed the removal of potential jurors because of potential bias or hardship.  Petitioner's counsel was present for these in-chambers discussions.  A criminal defendant is not prejudiced by his or her absence from an in-chambers conference concerning the dismissal of a juror or jurors, where defense counsel was present and zealously defended the rights of his or her client. *See U.S. v. Brown,* 571 F.2d 980, 987 (6th Cir. 1978); *See also U.S. v. Gibbs*, 182 F.3d 408, 437-38 (6th Cir. 1999)(reversal was not warranted under the harmless error test as the result of the erroneous exclusion of defendants from a portion of the *voir dire,* where the exclusion involved only a small portion of the *voir dire*, counsel for all defendants were present, and the district court specifically informed counsel that they could confer with their clients at any time during this portion of *voir dire*).  Because petitioner's counsel was present during the in-chambers conferences,  petitioner has failed to show that he was prejudiced by his absence from these conferences.

Petitioner has also failed to show that he was prejudiced by his absence from the hearing concerning the misconduct of one of the jurors.  Petitioner's counsel was present for this hearing.  At the conclusion of the hearing, the judge ordered that this juror be excused and replaced with an alternate juror.  When petitioner was returned to the courtroom, he was able to move for a mistrial based upon the alleged juror misconduct.  Moreover, a record of the proceedings was made.  Under these circumstances, petitioner has failed to show that he was prejudiced by his absence from the hearing. *See U.S. v. Florea,* 541 F. 2d 568, 572-73 (6th Cir. 1976)(defendants were not prejudiced because they were absent when the district judge excused one juror,

-15-

substituted an alternate, and sequestered the jury, where the judge carefully prepared a record of the proceedings, including the testimony of the juror and the court's reasons for excusing him).  Petitioner is not entitled to relief on his second claim.

### E.  Claim # 3.  The sufficiency of evidence claim.

Petitioner next contends that there was insufficient evidence of premeditation and deliberation to convict him of first-degree murder.

The Michigan Court of Appeals rejected petitioner's claim:

> The prosecution produced credible evidence that defendant had time to take a "second look" at his actions before the killing took place.  The prosecution introduced evidence that Sanders was killed with a large cement block found at the scene.  The cement block was originally located across the roadway as part of a wall.  The evidence also showed that Sanders was killed while she was lying down on the side of the roadway.  The jury could properly infer that defendant crossed the roadway to obtain the cement block and returned with it to kill Sanders.  The interval between crossing the road to obtain the block and returning with it to kill Sanders would be long enough to afford a reasonable person to take a "second look" at his actions.  In addition, the prosecution produced evidence that defendant hit Sanders twice with the same block as she was lying on the ground. The jury could properly infer that the defendant had sufficient time to take a "second look" at his actions as he used the same block to strike Sanders a second time.

*Schneider,* Slip. Op. at * 3 (internal citation omitted).

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970).  But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether *it* believes that the

-16-

evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19(internal citation and footnote omitted)(emphasis in the original).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 132 S. Ct. 2, 4 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S.Ct. 2060, 2065 (2012).

Finally, on habeas review, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992). A habeas court therefore must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003).

To constitute first-degree murder in Michigan, the state must establish that a defendant's intentional killing of another was deliberated and premeditated. *See Scott v. Elo*, 302 F. 3d 598, 602 (6th Cir. 2002)(citing *People v. Schollaert*, 194 Mich. App. 158; 486 N.W.2d 312, 318 (1992)). The elements of premeditation and deliberation may be inferred from the circumstances surrounding the killing. *See Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 596 (E.D. Mich. 2001)(citing *People v. Anderson*, 209 Mich. App. 527, 537; 531 N. W. 2d 780 (1995)). Premeditation may be established through evidence of the following factors:

1. the prior relationship of the parties;
2. the defendant's actions before the killing;
3. the circumstances of the killing itself;
4. the defendant's conduct after the homicide.

*Cyars v. Hofbauer,* 383 F. 3d 485, 491 (6th Cir. 2004); *Anderson*, 209 Mich. App. at 527.

Although the minimum time required under Michigan law to premeditate "is incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a 'second look.'" *See Williams v. Jones,* 231 F. Supp. 2d 586, 594-95 (E.D. Mich. 2002)(*quoting People v. Vail,* 393 Mich. 460, 469; 227 N.W. 2d 535 (1975)). "A few seconds between the antagonistic action between the defendant and the victim and the defendant's decision to murder the victim may be sufficient to create a jury question on the issue of premeditation." *Alder v. Burt,* 240 F. Supp. 2d 651, 663 (E.D. Mich. 2003). "[A]n opportunity for a 'second look' may occur in a matter of seconds, minutes, or hours, depending upon the totality of the circumstances surrounding the killing." *Johnson,* 159 F. Supp. 2d at 596 (quoting *People v. Berthiaume*, 59 Mich. App. 451,

-18-

456 (1975)).  Premeditation and deliberation may be inferred from the type of weapon used and the location of the wounds inflicted. *See People v. Berry*, 198 Mich. App. 123, 128; 497 N. W. 2d 202 (1993).  Use of a lethal weapon will support an inference of an intent to kill. *Johnson,* 159 F. Supp. 2d at 596 (citing *People v. Turner*, 62 Mich. App. 467, 470; 233 N.W. 2d 617 (1975)).  Finally, premeditation and intent to kill may be inferred from circumstantial evidence. *See DeLisle v. Rivers,* 161 F. 3d 370, 389 (6th Cir. 1998).

The Michigan Court of Appeals' determination that there was sufficient evidence of premeditation and deliberation to sustain petitioner's first-degree murder conviction was reasonable.  Petitioner hit the victim in the head with a large cement block, literally fracturing her head into over sixty pieces.  A jury could infer premeditation from petitioner's act of striking the victim in the head with a heavy object with sufficient force that caused the victim's death. *See Ware v. Harry,* 636 F. Supp. 2d 574, 596 (E.D. Mich. 2008).  There was also evidence that petitioner may have strangled the victim. Manual strangulation can be evidence that a defendant had an opportunity to take a "second look," so as to support a finding of premeditation. *See People v. Gonzalez*, 468 Mich. 636, 641, 664 N.W.2d 159 (2003).  Petitioner's attempts to conceal the murder by hiding the victim under some weeds could also support an inference of premeditation. *Id.*  The fact that petitioner attempted to flee and elude the police after the killing would also support a finding of premeditation and deliberation. *See e.g. Marsack v. Howes*, 300 F. Supp. 2d 483, 492 (E.D. Mich. 2004).  Additionally, the fact that petitioner did not attempt to seek medical help for the victim after being arrested for drunk driving could lead a rational trier of fact to conclude that petitioner acted with premeditation and

-19-

deliberation when he killed the victim. *See Delisle*, 161 F. 3d at 389. Finally, although petitioner told the police that he acted in self-defense after the victim attacked him with a knife, Dennis Gilleylen, an inmate at the Kalamazoo County Jail, indicated that petitioner had admitted that he had fabricated this story. Petitioner's act of giving false information to the police after being arrested also supports a finding of premeditation. *See Spalla v. Foltz,* 615 F. Supp. 224, 229 (E.D. Mich. 1985).

In the present case, the Michigan Court of Appeals' rejection of petitioner's sufficiency of evidence claim was reasonable. Petitioner is not entitled to habeas relief on his third claim.

**F. Claim # 4. The jury instruction claim**.

Petitioner next contends that the trial court erred in failing to instruct the jury on the defense of imperfect self-defense.

The Michigan Court of Appeals rejected petitioner's claim, because he had not advanced an imperfect self-defense theory at trial. *Schneider,* Slip. Op. at * 3.

The Sixth Circuit has held that "[g]enerally, a defendant is entitled to jury instructions on defense theories that are supported by law and raised by the evidence presented." *Williams v. Kentucky*, 124 F. 3d 201, 204 (6th Cir. 1997).

At the time of petitioner's trial, the Michigan Supreme Court had yet to recognize the doctrine of imperfect self-defense as a defense. *See People v. Posey*, 459 Mich. 960; 590 N.W. 2d 577 (1999). The Michigan Court of Appeals, however, had recognized imperfect self-defense as a qualified defense that could mitigate a murder charge to voluntary manslaughter. The Michigan Court of Appeals held that the defense of imperfect self-defense was available where the defendant would have been

-20-

entitled to raise the theory of self-defense had he or she not been the initial aggressor. *See People v. Kemp*, 202 Mich. App. 318, 323; 508 N.W. 2d 184 (1993).

Recently, however, the Michigan Supreme Court has held that the doctrine of imperfect self-defense is not available as " a freestanding defense that mitigates a murder to manslaughter because it was not recognized as such under the common law at the time the Legislature codified the crimes of murder and manslaughter." *People v. Reese*, 491 Mich. 127, 150; --- N.W.2d ---- (2012).

State courts are the "ultimate expositors of state law." *Mullaney v. Wilbur,* 421 U.S. 684, 691 (1975). What is essential to establish the elements of a crime is a matter of state law. *See Sanford v. Yukins,* 288 F. 3d 855, 862 (6th Cir. 2002). Likewise, "[D]ue process does not require that a defendant be permitted to present any defense he chooses. Rather, states are allowed to define the elements of, and defenses to, state crimes." *See Lakin v. Stine,* 80 Fed. Appx. 368, 373 (6th Cir. 2003)(citing *Apprendi v. New Jersey*, 530 U.S. 466, 484-87 (2000); *McMillan v. Pennsylvania*, 477 U.S. 79, 84-86, (1986)). The circumstances under which a criminal defense may be asserted is thus a question of state law. *Id.*

Although at the time of petitioner's trial the Michigan Court of Appeals had held that the doctrine of imperfect self-defense exists as a defense to the crime of murder, the Michigan Supreme Court has now held that imperfect self-defense is not available as a defense to murder charges in Michigan. Because of this change in the law, petitioner would not be entitled to habeas relief on his claim. Habeas relief under 28 U.S.C. § 2254 "is available only to state prisoners who currently are being held in violation of an existing constitutional right, not to inmates who at one point might have

-21-

been able to show that a since-overruled Supreme Court or lower court precedent

would have granted them relief." *Desai v. Booker*, 538 F. 3d 424, 428 (6th Cir. 2008).

Moreover, there is no practical remedy that this Court can give to petitioner by granting

him a new trial on this basis. The most that petitioner could hope for is a new trial, in

which he would no longer be permitted under Michigan law to raise a defense of

imperfect self-defense. Since any new trial would look exactly like the old trial in the

sense that the jury would again not be instructed on imperfect self-defense, the trial

court's failure to instruct on imperfect self-defense at petitioner's trial "is the epitome of a

harmless and therefore uncorrectable error on habeas review." *Id.* (Citing *Brecht v.*

*Abrahamson*, 507 U.S. at 638). Petitioner would not be entitled to habeas relief on his

fourth claim.

### G.  Claim # 5.  The ineffective assistance of trial counsel claim.

Petitioner lastly claims that he was denied the effective assistance of trial

counsel.

To show that he was denied the effective assistance of counsel under federal

constitutional standards, a defendant must satisfy a two prong test. First, the defendant

must demonstrate that, considering all of the circumstances, counsel's performance

was so deficient that the attorney was not functioning as the "counsel" guaranteed by

the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing,

the defendant must overcome a strong presumption that counsel's behavior lies within

the wide range of reasonable professional assistance. *Id.* In other words, petitioner must

overcome the presumption that, under the circumstances, the challenged action might

be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show

-22-

that such performance prejudiced his defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 131 S. Ct. at 792). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 130 S. Ct. 383, 390-91 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 131 S. Ct. at 785. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 129 S. Ct. at 1420 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Pursuant to § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This

means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 131 S. Ct. at 785. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)).

In addition, a reviewing court must not merely give defense counsel the benefit of the doubt, but must also affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did. *Cullen v. Pinholster,* 131 S. Ct. 1388, 1407 (2011).

Petitioner first contends that counsel was ineffective for failing to object to Deputy Denoon's references to his post-arrest, pre-*Miranda* silence.  In light of the overwhelming evidence against petitioner in this case, defense counsel's failure to object to the prosecutor's mention of petitioner's silence did not prejudice petitioner and thus did not amount to the ineffective assistance of counsel. *See Harding v. Bock,* 107 Fed.Appx. 471, 479-80 (6th Cir. 2004).

Petitioner next contends that his trial counsel was ineffective for waiving his presence during the in-chambers conferences during jury selection and at the hearing at the end of the case on juror misconduct.  To prevail on a claim that counsel was ineffective for allowing the defendant to waive his presence during a jury selection process, the defendant must demonstrate not only that counsel was deficient, but that this deficiency prejudiced the defense. *Campbell v. Wood,* 18 F. 3d 662, 673 (9th Cir. 1994).  This Court has already concluded that petitioner is unable to establish that he was prejudiced from his absence from the in-chambers conferences on the potential

jurors and the subsequent juror misconduct hearing.  Because petitioner is unable to establish that he was prejudiced by his absence from these proceedings, he is unable to establish that counsel was ineffective for waiving his presence at these hearings.

Petitioner lastly claims that trial counsel was ineffective for failing to request a jury instruction on imperfect self-defense.  As mentioned when discussing petitioner's fourth claim, *supra,* Michigan no longer recognizes the doctrine of imperfect self-defense.  In *Lockhart v. Fretwell*, 506 U.S. 364, 366 (1993), the U.S. Supreme Court held that when a lawyer fails to raise "an objection that would have been supported by a decision which subsequently was overruled," a defendant cannot show that he was prejudiced for purposes of the *Strickland* test.  In such a case, it is improper for a reviewing court to focus on "mere outcome determination", because the result of the proceeding was not fundamentally unfair or unreliable. *Id.* at 369.  The U.S. Supreme Court concluded that "[T]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Id.* at 369-370 (citing *United States v. Cronic*, 466 U.S. 648, 658 (1984)).

In the present case, petitioner is no longer entitled under Michigan law to raise a defense of imperfect self-defense.  To grant petitioner a new trial based upon trial counsel's failure to request an instruction on imperfect self-defense would grant petitioner a windfall to which he is not entitled.  The Court will deny petitioner relief on his fifth claim.

-25-

## IV.  Conclusion

The Court will deny the petition for writ of habeas corpus.  The Court will also deny a certificate of appealability to petitioner.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right.  *Myers v. Straub,* 159 F. Supp. 2d 621, 629 (E.D. Mich. 2001).

## V. <u>ORDER</u>

Based upon the foregoing, IT IS ORDERED that the Petition for a Writ of Habeas Corpus is **DISMISSED WITH PREJUDICE.**

-26-

IT IS FURTHER ORDERED that a Certificate of Appealability is **DENIED**.

Dated:  July 10, 2012

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE
Copies of this Order were served upon attorneys of record on
July 10, 2012, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk